THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LONGHORN VACCINES & DIAGNOSTICS, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>SPECTRUM SOLUTIONS LLC, a Delaware limited liability company,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [27] TO DISMISS**<br><br>Case No. 2:20-cv-00827-DBB-JCB<br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

Plaintiff Longhorn Vaccines and Diagnostics, LLC (Longhorn) alleges that Defendant Spectrum Solutions LLC (Spectrum) has infringed, and continues to infringe, six of its patents.[1] It seeks damages for direct and indirect infringement as well as enhanced damages based on its claim that Spectrum's infringement was, and is, willful.[2]

Before the court is Spectrum's motion to dismiss.[3] Spectrum asks the court to dismiss Longhorn's indirect infringement and willful infringement claims with prejudice under Federal

---

[1] Longhorn's First Amended Complaint (FAC), ECF No. 25. The FAC was filed on January 8, 2021, more than 21 days after Longhorn served its initial complaint on Spectrum and before Spectrum filed any type of response thereto. *See* ECF Nos. 2, 6, 10, 25, 27. Because Longhorn filed the FAC outside the time period for amendments as a matter of course, and did not seek leave to amend, the court will assume Longhorn obtained written consent from Spectrum to do so. *See* Fed. R. Civ. P. 15(2). At the very least, the court assumes that Spectrum has waived any objections to the FAC, as it raised no objections to the FAC, and addresses its allegations, in the motion to dismiss currently before the court. *See* ECF No. 27 at 1–3.

[2] *See generally* ECF No. 25. Longhorn asserts direct infringement in its First, Third, Fifth, Seventh, Ninth, and Eleventh Claims for Relief and indirect infringement in its Second, Fourth, Sixth, Eighth, Tenth, and Twelfth Claims for Relief. Willfulness is asserted as part of each infringement claim.

[3] ECF No. 27, filed January 22, 2021.

Rule of Civil Procedure 12(b)(6).[4] Longhorn opposes[5] the motion, and Spectrum has replied in support.[6]

Having considered the briefing, the pleadings and related exhibits, and relevant law, the court concludes the motion may be resolved without oral argument.[7] For the following reasons the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Longhorn is a limited liability company based in Maryland that develops, manufactures, and sells chemicals and solutions used to collect and preserve biological samples for testing.[8] It owns six patents (the "Asserted Patents") directed to chemical compositions containing various amounts of chaotropes, detergents and/or surfactants, reducing agents, chelators, and buffers as well as methods for using them to collect and preserve biological samples to test for infectious pathogens.[9] The Asserted Patents include:

- U.S. Patent No. 8,084,443 (filed Dec. 27, 2011) ('443 Patent),

- U.S. Patent No. 8,293,467 (filed Oct. 23, 2012) ('467 Patent),

- U.S. Patent No. 8,415,330 (filed Apr. 9, 2013) ('330 Patent),

- U.S. Patent No. 8,669,240 (filed Mar. 11, 2014) ('240 Patent),

- U.S. Patent No. 9,212,399 (filed Dec. 15, 2015) ('399 Patent), and

---

[4] *See generally id.*

[5] ECF No. 31, filed February 19, 2021.

[6] ECF No. 32, filed March 5, 2021.

[7] *See* DUCivR 7-1(f).

[8] ECF No. 25 at ¶¶ 1, 7. For purposes of this motion to dismiss, the court treats all of Longhorn's factual allegations and the reasonable inferences therefrom as true. *See Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014).

[9] ECF No. 25 at ¶¶ 17–18.

- U.S. Patent No. 9,683,256 (filed June 20, 2017) ('256 Patent).[10]

Longhorn has developed several sample collection products based on these patents, including its PrimeStore® and PrimeExtract™ products.[11] When a biological sample is added to a product containing one of Longhorn's patented chemical compositions, the composition neutralizes possible infectious pathogens in the sample, lyses cells to release RNA and DNA from any biological specimens it contains, protects the released genetic material from degradation, and prolongs the length of time the sample may be stored or transported before its genetic material is destroyed or compromised.[12]

Spectrum is a limited liability company based in Utah that also develops, manufactures, and sells aqueous chemical compositions used to collect, transport, and store genetic and other biological samples for testing.[13] One of the biological sample collection systems Spectrum produces and sells, the SDNA-1000, contains a chemical composition similar to the compositions disclosed in the Asserted Patents.[14] Spectrum advertises that the SDNA-1000's chemical composition is patented and capable of protecting DNA and viral RNA transcripts for testing.[15] Longhorn asserts that the composition used in the SDNA-1000 is disclosed in one of two patents owned by Spectrum: U.S. Patent No. 10,174,362 (filed Jan. 8, 2019) ('362 Patent) and U.S. Patent No. 10,774,368 (filed Sept. 15, 2020) ('368 Patent).[16]

---

[10] *Id.* at ¶¶ 9–14; *see also* Exhibits A through J, ECF Nos. 25-1 through 25-6.

[11] ECF No. 25 at ¶ 20.

[12] *Id.* at ¶¶ 7–15, 18–19.

[13] *Id.* at ¶ 21.

[14] *See id.* at 6, 8–9, 13–14, 16, 18–19, 24–25, 28–29, 33–35.

[15] *Id.* ¶ 24 (citing Exhibit G2, ECF No. 25-8 at 2).

[16] *Id.* ¶¶ 25–28.

Longhorn filed its First Amended Complaint (FAC) on January 8, 2021, alleging that Spectrum's production and sale of the SDNA-1000 directly and indirectly infringes at least one claim in each of the Asserted Patents.[17] Longhorn alleges that Spectrum has known of the Asserted Patents at least since April 11, 2018, and that it has willfully infringed them.[18] Spectrum moved to dismiss Longhorn's indirect infringement and willful infringement claims for failure to state a claim on January 22, 2021.[19]

## STANDARD OF REVIEW

Under Rule 12(b)(6), dismissal is required when the complaint, standing alone, is insufficient to state a claim upon which relief may be granted.[20] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] Generally, to be facially plausible, each claim must be supported by well-pleaded facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] There must be "more than a sheer possibility that a defendant has acted unlawfully."[23] A claim supported only by "labels and conclusions," "a formulaic recitation of the elements," or "naked assertions devoid of further

---

[17] *Id.* at ¶¶ 22. Longhorn mentions Spectrum's SDNA-2000 as a possibly infringing product in its amended complaint but directs its allegations, "without limitation," to the SDNA-1000. *Id.* at ¶ 22.

[18] *Id.* at ¶ 30.

[19] ECF No. 27.

[20] *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[22] *Id.*

[23] *Id.*

factual enhancement" is deficient and subject to dismissal.[24] In assessing whether a claim is plausible, courts must "draw on [their] judicial experience and common sense."[25]

## ANALYSIS

Longhorn claims that Spectrum is liable for patent infringement in three ways. First, it claims that Spectrum's SDNA-1000 directly infringes the Asserted Patents under 35 U.S.C. § 271(a).[26] To state a direct infringement claim, Longhorn must plausibly allege either that the SDNA-1000 infringes the Asserted Patents literally—that it contains elements identical to all the limitations of the allegedly infringed patents' claims[27]—or under the doctrine of equivalents— that it "performs substantially the same function in substantially the same way to obtain the same result."[28]

Second, Longhorn claims that Spectrum is liable for infringement under § 271(b)[29] for actively inducing its customers to infringe the Asserted Patents by instructing them to use the SDNA-1000 in a way that directly infringes the Asserted Patents.[30] To state an induced infringement claim, Longhorn must plausibly allege (1) that Spectrum's customers' use of the SDNA-1000 constitutes direct infringement and (2) that Spectrum knew that it was inducing its customers to infringe the Asserted Patents and specifically intended to do so.[31] Imbedded in

---

[24] *Id.* (citations, brackets, and internal quotation marks omitted).

[25] *Id.* at 679.

[26] ECF No. 25 at 7–10, 12–15, 17–21, 23–26, 28–30, 32–37.

[27] *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

[28] *See Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608 (1950) (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929)).

[29] 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").

[30] ECF No. 25 at 10–12, 16–17, 21–23, 26–27, 31–32, 37–38.

[31] *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).

these latter two elements is the requirement of establishing that Spectrum knew of the Asserted Patents when it induced its customers to infringe them.[32]

Third, Longhorn claims that Spectrum is liable for contributory infringement under § 271(c)[33] because Spectrum's customers infringe the Asserted Patents when they use the SDNA-1000.[34] To state a claim of contributory infringement, Longhorn must plausibly allege that (1) a third party's use of the SDNA-1000 constitutes direct infringement, (2) Spectrum had knowledge of the Asserted Patents, (3) the SDNA-1000 has no substantial non-infringing uses, and (4) the infringing components of the SDNA-1000 constitute a material part of each of the Asserted Patents.[35]

In addition to claiming direct, induced, and contributory infringement, Longhorn claims that Spectrum's infringement, and role in causing others to infringe, was willful.[36] When infringement is willful, the court may "increase damages up to three times the amount found or assessed" for the infringement.[37] To state a claim of willfulness, Longhorn must plausibly allege that (1) Spectrum had knowledge of the Asserted Patents at the time of infringement and (2) deliberately infringed them.[38]

---

[32] *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998) ("A crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent.").

[33] 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.").

[34] ECF No. 25 at 10–12, 16–17, 21–23, 26–27, 31–32, 37–38.

[35] *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

[36] *See generally* ECF No. 25.

[37] 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1929–31 (2016).

[38] *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

Spectrum asks the court to dismiss Longhorn's indirect infringement—induced and contributory infringement—and willful infringement claims.[39] Spectrum first argues that each of those claims fails because Longhorn's allegation that Spectrum had actual knowledge of the Asserted Patents before this lawsuit lacks adequate factual support.[40] Next, Spectrum argues that Longhorn's contributory infringement claims independently fail because its allegation that the SDNA-1000 has no substantial non-infringing use is conclusory and unsupported.[41] Finally, Spectrum argues that even if Longhorn's direct and indirect infringement claims are plausible, there is no basis for inferring that the infringement was willful because the FAC lacks allegations that Spectrum engaged in egregious conduct.[42]

## I.   Longhorn has Plausibly Alleged that Spectrum had Pre-Filing Knowledge of the '443 Patent, '330 Patent, '240 Patent, and '399 Patent, but only Post-Filing Knowledge of the '467 Patent and '256 Patent

In the FAC, Longhorn makes three factual assertions in support of its allegation that Spectrum had knowledge of the Asserted Patents before this lawsuit.[43] First, Longhorn alleges that Spectrum knew of the patents by April 11, 2018, when it cited "one or more" of them in an Information Disclosure Statement Form (IDS) filed during the prosecution of its '362 Patent.[44] Longhorn submitted an exhibit containing that IDS, along with three others in which Spectrum cited patents owned by Longhorn, with its response to Spectrum's motion.[45] Next, Longhorn alleges that Spectrum knew of the Asserted Patents' existence due to the patent markings on

---

[39] ECF No. 27 at 2, 5–14. Spectrum does not challenge the sufficiency of Longhorn's direct infringement claims but does argue that Longhorn has failed to adequately plead that any direct infringement was willful.

[40] *Id.* at 5–12. As explained above, showing actual knowledge is required by each of those claims.

[41] *Id.* at 12–13.

[42] *Id.* at 13–14.

[43] ECF No. 25 at 7.

[44] *Id.* at ¶ 30.

[45] ECF No. 31-1.

Longhorn's products.[46] Finally, Longhorn alleges that Spectrum gained knowledge of the Asserted Patents at least by June 30, 2020, when an investment company with connections to Spectrum, DW Healthcare Partners, contacted Longhorn to inquire about its products and the "potential for [a] mutually beneficial partnership" between Longhorn and Spectrum.[47]

Spectrum argues that these allegations, whether considered on their own or together, fail to adequately show that it had actual knowledge of the Asserted Patents prior to this lawsuit.[48] Spectrum argues that citations to a patent in an IDS do not support a reasonable inference that an alleged infringer had actual knowledge of it.[49] Even if citing a patent in an IDS could show actual knowledge, Spectrum argues, Longhorn's allegations are inadequate because the FAC fails to specify which of the Asserted Patents were cited in the IDS it submitted on April 11, 2018.[50] Spectrum contends that without such information, there is no basis for the court to infer which, if any, of the Asserted Patents Spectrum knew about.[51]

Spectrum argues that the existence of patent markings on Longhorn's products and the contact between DW Healthcare Partners and Longhorn also fail to show that Spectrum had actual knowledge of the Asserted Patents. Spectrum contends that although patent markings may satisfy the notice requirements of 35 U.S.C. § 287(a),[52] the FAC is devoid of allegations about

---

[46] ECF No. 25 at ¶ 31.

[47] *Id.* at ¶ 32.

[48] ECF No. 27 at 6–11.

[49] ECF No. 27 at 6–8 (citing *Core Optical Techs., LLC v. Nokia Corp.*, No. SACV1902190JAKRAOX, 2020 WL 6126285, at *7 (C.D. Cal. Oct. 8, 2020); *Olaf Soot Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456, 464 (S.D.N.Y. 2018); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016); and *Callwave Commc'ns LLC v. AT & T Mobility LLC*, No. CV 12-1701-RGA, 2014 WL 5363741, at *2 (D. Del. Jan. 28, 2014)).

[50] *Id.* at 8; ECF No. 32 at 1–2. The court will refer to this IDS as the April 2018 IDS.

[51] *Id.* at 8; ECF No. 32 at 1–2.

[52] (a) Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented . . . . In the event of failure so to mark, no damages shall be recovered by the

how Spectrum gained knowledge of the Asserted Patents therefrom.[53] Spectrum argues that the assertion that it gained knowledge of the Asserted Patents from DW Healthcare Partners is equally unsupported by the FAC's allegations because it provides no basis for inferring that DW Healthcare Partners ever had knowledge of the Asserted Patents or that it passed such knowledge on to Spectrum.[54]

Beginning with the last of these allegations, Longhorn's allegation that Spectrum had knowledge of the Asserted Patents based on its relationship with DW Health Partners does not meet *Iqbal*'s standard of plausibility. Even accepting the allegations in the FAC as true, there is nothing about exploring the "potential for [a] mutually beneficial partnership"[55] with Longhorn that necessarily implies that DW Healthcare Partners knew about the Asserted Patents before contacting Longhorn or that they were discussed at any point during its communications with Longhorn. And Longhorn has failed to assert any other facts to support the inference that DW Healthcare Partners had actual knowledge of the Asserted Patents or that it passed such knowledge on to Spectrum if it did. Such conclusions are speculative at best and do not establish grounds for inferring that Longhorn is entitled to relief.[56]

The patent markings on Longhorn's products likewise provide little, if any, support for the claim that Spectrum had pre-filing knowledge of the Asserted Patents. Although courts have found patent markings supportive of such an inference in some cases, they have generally done

---

patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter . . . .

35 U.S.C. § 287(a).

[53] ECF No. 27 at 9–10.

[54] *Id.* at 10–11.

[55] ECF No. 25 at ¶ 32.

[56] *See Twombly*, 550 U.S. at 555.

so only when plaintiffs alleged additional facts indicating that the alleged infringer had knowledge of the patents or at least knew of, or had access to, the products bearing the relevant patent markings.[57] The FAC contains no facts regarding Spectrum's familiarity with, or access to, Longhorn's products before this lawsuit apart from the general implication that Spectrum is one of its competitors. While this may make it more plausible that Spectrum was aware of Longhorn's products and, consequently, the patent markings they bore, it is not enough on its own to support actual knowledge of each of the Asserted Patents.[58] Thus, whether Longhorn has plausibly alleged that Spectrum had actual knowledge of the Asserted Patents comes down to whether patent citations in an IDS may be used to show actual knowledge.

Spectrum, relying on various cases, asserts that citations to patents in an IDS are insufficient on their own to plausibly show actual knowledge of those patents.[59] Longhorn disagrees, arguing that the cases cited by Spectrum are distinguishable for various reasons and

---

[57] *See WBIP*, 829 F.3d at 1342 (acknowledging that patent markings in a small, competitive industry provided some evidence suggesting knowledge when the plaintiff also produced internal documents from the defendant showing that it was aware of the patents at the time of infringement); *Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*, No. CV194952MWFRAOX, 2019 WL 8161141, at *4 (C.D. Cal. Aug. 30, 2019) (dismissing a plaintiff's willful infringement claim based on the knowledge element when plaintiff alleged only that its products bore patent markings without "explain[ing] whether Defendants had access to its products, whether it was marked at the time Defendants had such access, and how Defendants would have become aware of . . . two patents that were not marked"); *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1238 (D. Utah 2013) (finding a genuine issue of material fact as to whether defendant had actual knowledge of a patent when the plaintiff's products bore patent markings and the plaintiff produced emails showing that the defendant was aware of the products that were marked); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, No. 10CV677 JLS MDD, 2012 WL 202664, at *4 (S.D. Cal. Jan. 23, 2012) (acknowledging that patent markings in a small, competitive industry provided some evidence suggesting knowledge when the plaintiff also produced a letter it sent to the defendant describing the patents and offering the defendant an opportunity to license them).

[58] *See Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, No. 3:16-CV-263 RLM-MGG, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10, 2018) (finding a plaintiff's allegations regarding the defendant's knowledge of the patents-in-suit implausible when "the only  factual allegations in support of the knowledge element [were] that the companies were competitors and [the defendant] actively monitored intellectual property in the recreational vehicle industry"); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011) ("[T]hat the litigants are competitors in the same industry is a fact that makes knowledge of the patent at issue more plausible, even if not sufficiently plausible by itself to pass muster under *Iqbal*.").

[59] *See supra* note 49.

citing case law supporting its position.[60] Longhorn argues that the April 2018 IDS supports an

inference that Spectrum had knowledge of the Asserted Patents because Spectrum was obligated

to cite patents that were materially relevant to the prosecution of its '362 Patent therein.[61] Thus,

when Spectrum cited some of the Asserted Patents, it effectively acknowledged that it knew

enough about them to understand their relevance and importance to its own patent application.[62]

Having considered the cases cited by the parties and other case law, the court finds no

reason to conclude that citations to a patent in an IDS cannot support an inference that the party

who submitted the IDS had knowledge of that patent. Several courts have found that citations to

a patent in an IDS filed by the alleged infringer provide sufficient evidence of actual knowledge

to survive a motion to dismiss.[63] And, indeed, the reasons for reaching this conclusion are

---

[60] ECF No. 31 at 6–10 (citing *Mallinckrodt Inc. v. E-Z-EM Inc.*, 671 F. Supp. 2d 563, 569 (D. Del. 2009)).

[61] *Id.* at 7 (citing MPEP §§ 609, 2209, 2242).

[62] *Id.*

[63] *See Lytone Enter., Inc. v. Agrofresh Sols., Inc.*, No. CV 20-678-LPS, 2021 WL 534868, at *3 (D. Del. Feb. 12, 2021), *report and recommendation adopted*, No. CV 20-678-LPS-SRF, 2021 WL 1153002 (D. Del. Mar. 26, 2021) (finding that citations in an IDS sufficiently supported an inference of actual knowledge because the defendant represented that it was aware of the patent, and its materiality to its own application, by citing it in the IDS); *Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*, No. CV 17-1086-LPS, 2018 WL 5669168, at *14 (D. Del. Nov. 1, 2018), *report and recommendation adopted*, No. CV 17-1086-LPS-CJB, 2019 WL 1276028 (D. Del. Mar. 20, 2019) (finding that citation in an IDS supported an inference of actual knowledge); *Soverain IP, LLC v. Microsoft Corp.*, No. 217CV00204RWSRSP, 2018 WL 1465792, at *2 (E.D. Tex. Mar. 26, 2018) (finding that citation to patent-in-suit in 11 of the defendant's patent applications, along with the fact that the patents were cited in many other patents and applications, supported a reasonable inference that the defendant had actual knowledge of the patent); *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 215CV1274JRGRSPLEADC, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016), *report and recommendation adopted*, No. 2:15-CV-1274-JRG-RSP, 2016 WL 4771291 (E.D. Tex. Sept. 13, 2016) (finding that defendant's citing the patent application of the patent-in-suit in its own patent application provided a reasonable basis for inferring that it had pre-filing knowledge of that patent); *Biosonix, LLC v. Hydrowave, LLC*, No. 4:16-CV-139, 2016 WL 9229848, at *4 (E.D. Tex. Aug. 10, 2016) (finding that the plaintiff had plausibly alleged that the defendant had actual knowledge when two of its founders cited the patent-in-suit, and a user guide for a product based on it, when applying for a patent); *Intell. Ventures I LLC v. AT & T Mobility LLC*, 69 F. Supp. 3d 461, 465 (D. Del. 2014) ("A complaint may sufficiently plead a defendant's actual knowledge when 'a plaintiff alleges that a defendant previously filed papers with the PTO identifying the patents as prior art.'" (quoting *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012))); *Glob. Sessions, LP v. JPMorgan Chase & Co.*, No. A-13-CA-688-SS, 2013 WL 12086369, at *2 (W.D. Tex. Nov. 18, 2013) (finding citations to the patent-in-suit in the defendant's patents sufficiently showed that defendant had knowledge thereof); *Mallinckrodt*, 671 F. Supp. 2d at 569 (finding that defendants were aware of a patent's existence since the time it was cited as prior art in an IDS); *see also Hilgraeve, Inc. v. Symantec Corp.*, 272 F. Supp. 2d 613, 619 n.6 (E.D. Mich. 2003) (reaching the same finding in the summary judgment context).

persuasive. When filing an IDS, patent applicants must disclose "all information known . . . to be material to patentability," which includes "[a] list of all patents, publications, applications," and other relevant prior art known to the applicants.[64] Thus, the act of citing a patent in an IDS necessarily implies that the one preparing and submitting it possesses some degree of knowledge regarding that patent and its contents.

Of course, as Spectrum points out, some courts have reached a different conclusion when citations to a patent in an IDS were offered as evidence that a defendant had actual knowledge of that patent.[65] However, none of the cases Spectrum cites definitively states that citations in an IDS are categorically incapable of supporting an inference of actual knowledge. In all but one of the cases Spectrum cites, the courts found citations in an IDS inadequate because the plaintiff failed to adequately show how the accused infringer was connected to the IDS and related patent prosecution.[66] Indeed, this appears to be a common pitfall for plaintiffs who present IDSs as evidence of an alleged infringer's knowledge.[67] In the other case Spectrum cites, the court stated

---

[64] 37 C.F.R. §§ 1.56(a), 1.98.

[65] See supra note 49.

[66] See Core Optical, 2020 WL 6126285, at *6–7 (finding that a plaintiff failed to adequately allege that patent citations in IDSs showed actual knowledge when it failed to explain who submitted the IDSs and prosecuted the patents subsequently owned by the accused infringer); DermaFocus, 201 F. Supp. 3d at 471 (finding that it was not plausible to infer that a defendant had actual knowledge of a patent cited in an IDS submitted by one its founders and board members ten years earlier and for another company); see also Olaf Soot, 325 F. Supp. 3d at 464 (finding, on a motion for summary judgment, that citations to the patent-in-suit in an IDS were insufficient to show that the defendant had actual knowledge because there was no evidence that the defendant played any role in creating or reviewing IDSs and had a general practice of not doing so).

[67] See Grecia v. VUDU, Inc., No. C-14-0775-EMC, 2015 WL 538486, at *7 (N.D. Cal. Feb. 9, 2015) (finding that patent citations in an IDS did not support an inference that a defendant had actual knowledge of the patent when the defendant played no role in the submission of the IDS or prosecution of the patent application); Varian Med. Sys., Inc. v. Elekta AB, No. CV 15-871-LPS, 2016 WL 3748772, at *5 (D. Del. July 12, 2016), report and recommendation adopted, No. CV 15-871-LPS, 2016 WL 9307500 (D. Del. Dec. 22, 2016) (finding that patent citations and discussions in an application filed by one of the defendant's subsidiaries was not enough to infer that the defendant had knowledge of the patent when the plaintiff alleged no connection between the defendant and the application other than the fact that it was the parent company of the company that filed it); SoftView LLC v. Apple Inc., No. CIV. 10-389-LPS, 2012 WL 3061027, at *5 (D. Del. July 26, 2012) (explaining that a citation to the patent-in-suit in an application filed by a subsidiary of the defendant was not an adequate basis on its own to infer that the defendant itself had pre-filing knowledge of the patent); Chalumeau Power Sys. LLC v. Alcatel-Lucent, No. CIV.A. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (finding that citations to the patent-in-suit

that a defendant's "knowledge of one of the patents . . . as evidenced by citation to the patent in

multiple Information Disclosure Statements" was, without more, "insufficient to support an

*allegation of willfulness*."[68] Thus, the court did not find that citations to a patent in an IDS do not

provide grounds for inferring the defendant had knowledge thereof, only that such knowledge

alone was insufficient to state a plausible willfulness claim.[69] Even if there were a case in which

the court categorically rejected citations to a patent in a defendant's IDS as grounds for inferring

knowledge—and the court was unable to find such a case—that conclusion would be outweighed

by the case law and reasoning discussed above.[70]

       Spectrum's next argument is that even if citations to a patent in an IDS can support an

inference of actual knowledge, the FAC fails to show that Spectrum had actual knowledge of *all*

the Asserted Patents because Longhorn has not specified which of the patents the April 2018 IDS

cited.[71] In response to this argument, Longhorn produced four IDSs submitted by Spectrum—

one of which is the April 2018 IDS referenced in the FAC—that cite various Longhorn patents,

including all but one of the Asserted Patents.[72]

---

in three of the defendant's patent applications did not support an inference of actual knowledge when "[t]he connection between the moving defendants and the patent applications from nearly a decade ago are not explained sufficiently to make plausible that either of the defendants had actual knowledge").

[68] *See Callwave*, 2014 WL 5363741, at *2 (emphasis added). This is not a surprising outcome because, as already noted above, willfulness requires showing knowledge of a patent *and* deliberate infringement of that patent. *See Bayer*, 989 F.3d at 988.

[69] *Id.*

[70] Spectrum may very well be able to show that the knowledge implied by citations to a patent in an IDS is not sufficiently attributable to it for one reason or another, but that possibility does not make such evidence per se insufficient at the pleadings stage.

[71] ECF No. 27 at 8.

[72] ECF Nos. 31 at 7–8; 31-1. One of the other three IDSs Longhorn provided was also submitted by Spectrum during the prosecution of its '362 Patent, but only the first, the April 2018 IDS, cites any of the Asserted Patents. ECF No. 31-1 at 2–6. That IDS is also the only one referenced in the FAC. ECF No. 25 at 7.

Spectrum argues that the IDSs Longhorn submitted with its opposition to Spectrum's motion do not cure the deficient pleading in the FAC.[73] Spectrum argues that the court should ignore the IDSs in determining whether Longhorn has plausibly alleged that Spectrum had pre-filing knowledge because they are not part of Longhorn's pleadings.[74] Even if the court were to consider some or all of the IDSs, Spectrum argues, they still do not show that Spectrum had knowledge of all of the Asserted Patents.[75]

Longhorn argues that the FAC's allegations are sufficient and that the court may properly consider the IDSs it submitted to support them because the IDSs are public records of which the court may take judicial notice.[76] Longhorn concedes that the IDSs do not cite one of the Asserted Patents—the '467 Patent—but it argues the court may nonetheless reasonably infer that Spectrum had knowledge of all the Asserted Patents because it repeatedly cited the other five Asserted Patents, and other Longhorn patents not at issue here, in its IDSs.[77]

These arguments raise two questions. The first is whether the court may consider any of the IDSs Longhorn submitted in determining whether the FAC's allegations support a reasonable inference that Spectrum had pre-filing knowledge of the Asserted Patents. Generally, the purpose of a court's Rule 12(b)(6) motion review is "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[78] "Although the sufficiency of a complaint must rest on its contents alone, there are exceptions to this restriction on what the

---

[73] ECF No. 32 at 1–2 & n.1.

[74] *Id.*

[75] *Id.*

[76] ECF No. 31 at 7–8.

[77] *Id.*

[78] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

court can consider."[79] However, these exceptions are "quite limited," and include: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice."[80] If the court intends to rely on evidence that does not fall within one of these exceptions, "it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties."[81]

Based on these standards, the court will consider the contents of the April 2018 IDS in determining whether Longhorn has plausibly alleged that Spectrum had pre-filing knowledge. That IDS is referenced in the complaint, and its contents are a matter of public record subject to judicial notice.[82] Also, Spectrum has not disputed its authenticity. The court will not consider the other IDSs Longhorn has submitted, however. Although there is little doubt that they are a type of public record generally subject to judicial notice—Spectrum makes no argument to the contrary—that does not mean that it would be proper to take judicial notice of them at this stage of the proceedings. Judicial notice is a mechanism for courts to recognize certain facts without requiring regular methods of proof, not for a plaintiff to provide new facts to support the allegations in its complaint.[83] Because none of the other IDSs are referenced in the FAC, it is not

---

[79] *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) (brackets, citation, and internal quotation marks omitted).

[80] *Id.* at 386 (citation and internal quotation marks omitted).

[81] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing Fed. R. Civ. P. 12(d)).

[82] *See Xlear, Inc. v. STS Health, LLC*, No. 2:14-CV-00806-DN, 2015 WL 8967574, at *3 (D. Utah Dec. 15, 2015) (acknowledging that district courts may take judicial notice of patent documents, such as a patent's prosecution history); *Won-Door Corp. v. Cornell Iron Works, Inc.*, No. 2:13-CV-331 TS, 2014 WL 119320, at *2–3 (D. Utah Jan. 13, 2014) (recognizing that district courts can take judicial notice of patent documents but finding that doing so at the motion to dismiss stage was premature due to the nature of the plaintiff's claims).

[83] *See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) ("Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence."); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

appropriate to use judicial notice to consider their contents in analyzing whether the FAC's

allegations satisfy *Twombly*'s and *Iqbal*'s pleading standards.[84]

The second question, then, is whether the FAC's allegations, supplemented by the

contents of the April 2018 IDS, support a reasonable inference that Spectrum had pre-filing

knowledge of *all* the Asserted Patents. The April 2018 IDS cites four of the Asserted Patents: the

'443 Patent, '330 Patent, '240 Patent, and '399 Patent.[85] Because Spectrum appears to be the

applicant who submitted the IDS, it is reasonable to infer, at least at this stage of the case, that it

was sufficiently connected to the IDS to have knowledge of what it contained.[86] Thus, drawing

all reasonable inferences in favor of Longhorn, and for the reasons discussed above, Longhorn

has plausibly alleged that Spectrum had pre-filing knowledge of those patents.

However, the April 2018 IDS does not cite Longhorn's '256 Patent or '467 Patent.[87]

Longhorn argues that this is not an issue because the citations to four of the Asserted Patents, and

other unspecified patents owned by Longhorn, support a reasonable inference that Spectrum

closely monitored Longhorn's patents and, thus, knew of the '256 Patent and '467 Patent as

well.[88] Based on the facts presented in the FAC, however, such an inference is too speculative to

be deemed plausible. As discussed above, the basis for inferring that Spectrum had knowledge of

the four Asserted Patents cited in its April 2018 IDS is that an IDS discloses patents that are

---

[84] *See Crocker v. Glanz*, 752 F. App'x 564, 568 (10th Cir. 2018) (unpublished); *Skipprint, LLC v. Rastar, Inc.*, No. 2:13-CV-00039, 2013 WL 4430873, at *5 (D. Utah Aug. 16, 2013). Of course, the IDSs are evidence that can be used at later stages to support Longhorn's claim that Spectrum had knowledge of the patents.

[85] ECF No. 31-1 at 2–4.

[86] *See* 37 C.F.R. § 1.56(c); *see also supra* notes 66–67 and accompanying text.

[87] ECF No. 31-1 at 2–5.

[88] ECF No. 31 at 7–8. Longhorn also argues that citations to five of the Asserted Patents and other non-asserted patents in the other IDSs it submitted further support an inference that Spectrum had knowledge of all the Asserted Patents. *Id.* As discussed above, however, the court will not consider the citations in those IDSs because they were not referenced in the FAC.

*known* to an applicant and believed to be relevant to the patentability of the applicant's invention.[89] There is nothing about making such disclosures that necessarily implies that Spectrum closely monitored *all* of Longhorn's patents sufficient to have knowledge of the '256 Patent and '467 Patent. And the FAC is otherwise devoid of facts supporting such an inference. Thus, Longhorn has failed to plausibly allege that Spectrum had pre-filing knowledge of the '256 Patent and '467 Patent.

Longhorn argues that even if Spectrum did not have actual knowledge of the '256 Patent and '467 Patent, Longhorn has plausibly established the actual knowledge element because the court can reasonably infer that Spectrum was "willfully blind" to their existence before this lawsuit.[90] Although the parties agree that a showing of willful blindness can satisfy the actual knowledge element in infringement cases, Longhorn's pleadings fall short on these grounds as well. To establish willful blindness in the context of patent infringement, a plaintiff must show that (1) the defendant "subjectively believe[d] that there [was] a high probability that a fact exists" and (2) the defendant "[took] deliberate actions to avoid learning . . . that fact."[91] Longhorn has alleged no facts from which the court could reasonably infer that Spectrum subjectively believed that there was a high probability that the '256 Patent and '467 Patent existed before it became aware of them through this lawsuit. Nor has Longhorn made any factual allegations regarding what steps Spectrum took to deliberately avoid learning about their existence. Thus, Longhorn has failed to plausibly allege that Spectrum was willfully blind to the '256 Patent and '467 Patent as an alternative to actual knowledge.

---

[89] *See* 37 C.F.R. §§ 1.56, 1.98. The Federal Circuit has noted that, "[a]s a general rule," applicants have "no duty to conduct a prior art search" before submitting an IDS. *See FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 526 n.6 (Fed. Cir. 1987).

[90] ECF No. 31 at 17–18.

[91] *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

This does not end the issue, however, because even though Longhorn has failed to plausibly allege that Spectrum had pre-filing knowledge of the '256 Patent and '467 Patent, the parties agree that Spectrum gained knowledge of them from Longhorn's complaint in this lawsuit.[92] The parties agree that this is sufficient to establish the knowledge element of Longhorns' post-filing indirect infringement claims based on those patents.[93] But they disagree whether a plaintiff can establish that post-filing infringement is willful when the defendant did not know about the patents before the complaint was filed.[94]

There is a split among district courts on this issue. Some have held that a plaintiff can claim that infringement post-filing is willful only if they have plausibly alleged pre-filing knowledge.[95] Others do not require a showing of pre-filing knowledge.[96]

Having considered this case law, and in the absence of controlling authority on the issue, the court finds no compelling reason to conclude that a plaintiff cannot state a post-filing willful infringement claim unless the plaintiff has plausibly alleged pre-filing knowledge, at least not on

---

[92] *See* ECF Nos. 31 at 15–17; 32 at 5–7. The initial complaint was filed on November 20, 2020, and served on November 25, 2020. ECF Nos. 2, 6.

[93] ECF Nos. 31 at 15–17; 32 at 5. *See InsideSales.com, Inc. v. SalesLoft, Inc.*, No. 2:16CV859DAK, 2017 WL 2559932, at *5 (D. Utah June 13, 2017) (finding that the majority of district courts agree that "post suit knowledge is sufficient to sustain a finding that defendant had the requisite knowledge to support claims for indirect infringement" (quoting *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1116 (N.D. Cal. 2016))).

[94] *Compare* ECF No. 31 at 15–17, *with* ECF No. 32 at 5–7.

[95] *See, e.g., ZapFraud, Inc. v. Barracuda Networks, Inc.*, No. CV 19-1687-CFC-CJB, 2021 WL 1134687, at *4 (D. Del. Mar. 24, 2021) (concluding that there can be no post-filing infringement claim when a plaintiff has failed to allege pre-filing knowledge sufficient to state a pre-filing willfulness claim because the purpose of a complaint is to obtain relief for an existing claim, not create one); *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:16-CV-1400-SI, 2017 WL 2543811, at *4 (D. Or. June 12, 2017) (finding that there is no basis for a post-filing willfulness claim if the plaintiff fails to plausibly allege pre-filing knowledge of the patents-in-suit); *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, No. 1:16-CV-2669-MHC, 2017 WL 3469535, at *3 (N.D. Ga. Apr. 6, 2017) (finding that willfulness claims can be based only on pre-filing conduct).

[96] *See, e.g., Merrill Mfg. Co. v. Simmons Mfg. Co.*, No. 1:20-CV-3941-MLB, 2021 WL 3493565, at *7 (N.D. Ga. Aug. 9, 2021) (allowing post-filing willful infringement claims to proceed to discovery even when the plaintiff failed to state a claim for pre-filing willfulness); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at *8 (D. Del. Jan. 25, 2019) (same); *Progme Corp. v. Comcast Cable Commc'ns LLC*, No. CV 17-1488, 2017 WL 5070723, at *12 (E.D. Pa. Nov. 3, 2017) (same).

the factual allegations present here. Courts acknowledge that patent infringement "is often 'an ongoing offense that can continue after litigation has commenced.'"[97] Even though infringement occurring before a complaint is filed cannot be deemed willful if the alleged infringer lacked knowledge of the asserted patents, that does not mean that infringement continuing after a complaint is filed cannot be willful just because the alleged infringer did not know about the patents until the complaint was filed. A court can award enhanced damages for post-filing willful infringement as long as the patent holder can prove that the infringer engaged in sufficiently culpable behavior after the complaint was filed.[98] There is no apparent reason defendants categorically should be immunized from claims that infringement in the post-filing period is willful just because they gained knowledge of the asserted patents from the complaint rather than before it was filed. Thus, because Spectrum gained knowledge of the '256 Patent and '467 Patent from Longhorn's complaint, Longhorn has plausibly pled the knowledge element of its post-filing willful infringement claims for those patents.

In summary, the court finds that Longhorn has plausibly alleged that Spectrum had pre-filing knowledge of the '443 Patent, '330 Patent, '240 Patent, and '399 Patent. Therefore, Spectrum's motion to dismiss Longhorn's pre-filing indirect infringement and willful infringement claims based on those patents will be denied.

However, Longhorn has failed to plausibly allege that Spectrum had pre-filing knowledge of the '256 Patent and '467 Patent. Because showing pre-filing knowledge of those patents is necessary to establish that they were indirectly and willfully infringed during the pre-filing

---

[97] *Liqwd, Inc. v. L'Oreal USA, Inc.*, 720 F. App'x 623, 628 (Fed. Cir. 2018) (unpublished) (citations omitted).

[98] *See Halo*, 136 S. Ct. at 1931–34; *see also Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement.").

period, Spectrum's motion to dismiss Longhorn's pre-filing indirect infringement and willful infringement claims will be granted as to those patents. Because Spectrum gained knowledge of those patents from Longhorn's initial complaint, Longhorn's post-filing willfulness claims will not be dismissed on those grounds.

## II.  Longhorn has Plausibly Alleged that the SDNA-1000 has No Other Substantial Non-Infringing Use.

Spectrum argues that Longhorn's contributory infringement claims should independently be dismissed because Longhorn has failed to properly plead that the SDNA-1000 has no substantial non-infringing use.[99] Spectrum asserts that Longhorn has done no more than make a single conclusory allegation that the SDNA-1000 "has no substantial use other than a use that directly infringes" its patents.[100] Relying on *CAO Group, Inc. v. Sybron Dental Specialties, Inc.*,[101] a case from this district, Spectrum argues that such an allegation is not enough to survive a motion to dismiss.[102]

Longhorn argues that its allegations are more than sufficient to support a reasonable inference that the SDNA-1000 has no substantial non-infringing use, especially in light of post-*Iqbal* case law stating that a plaintiff need not provide detailed factual allegations on that element at the pleadings stage.[103] Relying on *Driessen v. Sony Music Entertainment*,[104] another case from this district, Longhorn argues that all that is required to survive a motion to dismiss on this element is for the court to find that the plaintiff's factual allegations do not undermine its claim

---

[99] ECF Nos. 27 at 12–13; 32 at 9–10.

[100] ECF No. 27 at 12 (quoting the FAC).

[101] *CAO Grp., Inc. v. Sybron Dental Specialties, Inc.*, No. 2:12-CV-1062 DN-DBP, 2014 WL 119134, at *3 (D. Utah Jan. 10, 2014).

[102] ECF No. 27 at 12.

[103] ECF No. 31 at 13–14.

[104] *Driessen v. Sony Music Ent.*, No. 2:09-CV-0140-CW, 2013 WL 4501063, at *2 (D. Utah Aug. 22, 2013).

that a product has no substantial non-infringing use.[105] Longhorn asserts that the court's findings in *CAO Group* are faulty for failing to account for the reasoning in *Driessen*.[106] Thus, according to Longhorn, the FAC's factual allegations that (1) the SDNA-1000 contains an aqueous chemical composition that infringes the Asserted Patents, (2) the chemical composition is designed to achieve the same results the chemical compositions in the Asserted Patents are designed to achieve, and (3) the Asserted Patents are indirectly infringed when a third party adds a sample to the SDNA-1000's chemical composition are sufficient to support its claim that the SDNA-1000 has no substantial non-infringing use.[107] And because the FAC contains no facts suggesting the contrary, the allegations of no substantial non-infringing use remain plausible.[108]

To the extent that Longhorn relies on *Driessen* for the proposition that conclusory allegations of no substantial non-infringing use alone are sufficient under *Twombly* and *Iqbal* as long as the plaintiff's complaint does not show that a non-infringing use exists, the court disagrees. The court in *Driessen* indeed recognized the difficulty of pleading a negative, that "it is logically impossible to describe in detail that which does not exist,"[109] but that does not mean that allegations that a product has no substantial non-infringing use are exempt from *Twombly*'s and *Iqbal*'s requirements.[110] *In re Bill of Lading*, the Federal Circuit case upon which *Driessen*'s reasoning is based, reiterated that a contributory infringement claim requires plaintiffs to "plead facts that allow an inference that the [products] sold or offered for sale have no substantial non-

---

[105] ECF No. 31 at 14.

[106] *Id.* at 14.

[107] *Id.* at 14–15.

[108] *Id.*

[109] *Driessen*, 2013 WL 4501063, at *2.

[110] *See ScaleMP, Inc. v. TidalScale, Inc.*, No. 18-CV-04716-EDL, 2019 WL 7877939, at *5 (N.D. Cal. Mar. 6, 2019) (asserting that *Driessen* does not state that the requirements of *Twombly* and *Iqbal* may be disregarded). The court agrees with the *ScaleMP* court that *Driessen* did not set aside *Twombly*'s and *Iqbal*'s pleading standards.

infringing uses."[111] And when applying this standard, the Federal Circuit explicitly acknowledged that "the district court did not conclude that the allegations of contributory infringement lacked sufficient detail to satisfy the specificity requirement of *Twombly* and *Iqbal*; the district court found that affirmative allegations of fact in the amended complaints defeated any claim of contributory infringement."[112] In other words, the Federal Circuit did not find that merely alleging that a product has no substantial non-infringing use can withstand a motion to dismiss as long as the complaint does not contain any evidence to the contrary; it found that even if a plaintiff has pleaded facts that, on their own, would be sufficient to support an inference that a product has no substantial infringing use, a court can nonetheless find such an inference implausible if it is undermined by other facts in the complaint that show that a product has non-infringing uses.[113] Thus, while the difficulty of pleading the absence of substantial non-infringing uses should be taken into account when determining what inferences are reasonable at the pleadings stage, it does not absolve plaintiffs of their duty to provide sufficient factual matter to support an inference that a product has no substantial non-infringing uses.

Applying this standard, the court finds that the FAC, and attached documents, contain sufficient factual matter to support a reasonable inference that the SDNA-1000 has no substantial non-infringing uses. In the FAC, Longhorn alleges that the Asserted Patents are infringed when Spectrum's customers add a biological sample to the SDNA-1000, which contains a chemical composition whose formula is substantially similar to, and that performs the same functions as, the chemical compositions disclosed in the Asserted Patents.[114] Specifically, after a customer

---

[111] *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).

[112] *Id.*

[113] *See id.*

[114] *See generally* ECF No. 25. One reason Spectrum argues that Longhorn's allegations fail is because the infringing use it alleges, using the SDNA-1000 to "preserve and collect biological samples," is too generic to constitute

adds a sample to the SDNA-1000, its chemical composition deactivates infectious pathogens, extracts nucleic acids, and preserves the nucleic acids for testing on a later date.[115] Longhorn supports these allegations with copies of website pages and marketing materials in which Spectrum touts that the SDNA-1000 was specifically engineered to allow individuals to collect biological samples on their own and that the SDNA-1000's chemical composition is capable of inactivating viruses (and specifically the COVID-19 virus), suspending and neutralizing viral RNA, and preserving both DNA and RNA for over 10 days post-collection.[116] These facts support a reasonable inference that the SDNA-1000 has no substantial use by Spectrum's customers other than the one that is alleged to infringe the Asserted Patents: combining a biological sample with the SDNA-1000's chemical composition.[117]

Spectrum argues, in line with *Driessen*, that these allegations cannot support an inference that the SDNA-1000 has no substantial non-infringing use because other allegations in the FAC show that its patented chemical composition has non-infringing uses.[118] It argues that the materials submitted with the FAC show that the chemical composition was "initially created for the preservation of DNA used in genetic and molecular diagnostic testing" and that it is "particularly well suited" for tasks such as "paternity testing, [and] pre- and post-pregnancy genetic screening."[119] However, this argument fails for two reasons.

---

infringement. ECF No. 32 at 9. However, as the above shows, that is not the infringing act Longhorn alleges. In any event, whether Longhorn's allegations actually show that Spectrum's customers' use infringes the Asserted Patents is not at issue on this motion to dismiss. The only question here is whether Longhorn's allegations support a reasonable inference that the SDNA-1000 has no substantial non-infringing uses.

[115] ECF No. 25 at 9, 13–14, 16, 25.

[116] *See* ECF No. 25-9 at 5; *see also* ECF Nos. 25-7, 25-8.

[117] *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) (showing that a product "has no use except through practice of the patented method" is sufficient to state a claim of contributory infringement (quoting *Dawson Chem. Co. v. Rohm & Hass Co.*, 448 U.S. 176, 198 (1980))).

[118] ECF No. 32 at 9–10.

[119] *Id.* at 10 (quoting ECF Nos. 25-7 at 4; 25-2 at 33).

First, although Longhorn identifies the SDNA-1000's chemical composition as the main component that contributes to Spectrum's customers' infringement, the question here is whether the product Spectrum sells, the SDNA-1000, as a whole has substantial non-infringing uses, not whether any of its individual components or ingredients do.[120] Thus, even if the SDNA-1000's chemical composition, on its own, has non-infringing uses, that does not mean that the SDNA-1000 does.

Second, a customer's reason for using the SDNA-1000 to test a sample does not speak to whether the SDNA-1000 has any substantial non-infringing uses. Longhorn alleges that the very act of a customer adding a sample to the SDNA-1000 infringes the Asserted Patents due to the nature, amount, and function of the chemical composition it contains.[121] And its allegations support an inference that the SDNA-1000's only substantial use is to allow customers to add a sample to its chemical composition. The nature of the sample added to the SDNA-1000, and the purpose for which it is added, speaks to whether the customer's act constitutes infringement. While that is an element of a contributory infringement claim, it is not one that Spectrum challenges in its motion to dismiss.

For these reasons, the court finds that Longhorn has plausibly alleged that the SDNA-1000 has no substantial non-infringing use. Therefore, Spectrum's motion to dismiss on that ground is denied.

---

[120] *See Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987) (finding that the question of substantial non-infringing uses is determined by "the material actually sold by the accused and the uses made of it by its purchasers," not by the possible uses of any single ingredient); *Hoffmann-La Roche Inc. v. Promega Corp.*, No. C-93-1748-VRW, 1994 WL 761241, at *10 (N.D. Cal. June 13, 1994) (relying on *Hodosh* in finding a triable issue of fact as to non-infringing uses when a defendant sold an ingredient necessary to perform a patented method as part of a kit that, as a whole, was "unsuitable for substantial non-infringing use," even though the ingredient itself had non-infringing uses).

[121] ECF No. 31 at 14.

### III.  Longhorn has Plausibly Alleged Post-Filing, but Not Pre-Filing, Willful Infringement for All of the Asserted Patents.

Spectrum argues that all of Longhorn's willful infringement claims (both pre- and post-filing) should be dismissed because Longhorn failed to allege that Spectrum has engaged in the type of egregious conduct that justifies enhanced damages under 35 U.S.C. § 284.[122] Spectrum asserts that the only grounds Longhorn has alleged for inferring willfulness are that Spectrum knew of the Asserted Patents and infringed them.[123] According to Spectrum, this does not show sufficiently egregious conduct for the court to draw a reasonable inference that its alleged infringement was willful.[124]

According to Longhorn, a plaintiff need not show that an infringer engaged in egregious conduct for a willfulness claim to survive a motion to dismiss.[125] It asserts that a plaintiff need only create a plausible inference that the defendant's infringement was intentional or deliberate and that the FAC's allegations that Spectrum knew of the Asserted Patents and infringed them is sufficient to create such an inference.[126]

The Federal Circuit provided some clarity on the connection between willfulness and egregious conduct when reviewing a jury instruction on willfulness in *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*[127] It explained that willfulness and egregious conduct are separate, but related, legal issues in determining whether enhanced damages under § 284 are

---

[122] ECF No. 27 at 13–14. As discussed above, Longhorn's pre-filing willfulness claims for the '256 Patent and '467 Patent will be dismissed based on the knowledge element regardless of the outcome on this issue.

[123] ECF No. 32 at 8.

[124] *Id.*

[125] ECF No. 31 at 21.

[126] *Id.*

[127] *Eko*, 946 F.3d at 1378.

warranted.[128] "Willfulness" is a question for the jury, and a plaintiff need only show that infringement was "deliberate or intentional" for the jury to find that it was willful.[129] If a jury finds that infringement was willful, then the issue of whether to enhance damages falls within the court's discretion.[130] It is in exercising this discretion that the court must consider the egregiousness of the infringer's conduct and determine whether it warrants the punitive measure of enhanced damages.[131]

Although *Eko* dealt with a jury instruction, its explanation regarding what a plaintiff must show to prove willfulness is instructive of what is required of plaintiffs at the pleading stage. It is true that a plaintiff must convince the court that a defendant's infringing conduct was sufficiently egregious before it can receive enhanced damages under § 284,[132] but to establish that the infringement was willful, evidence of egregious conduct, beyond deliberateness, is not required.[133] As long as a plaintiff can show the defendant knew about the patents and deliberately infringed them, it has opened the door to the possibility of enhanced damages.[134] Whether a court

---

[128] *See id.*

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *See Halo*, 136 S. Ct. at 1932 (holding that enhanced damages for patent infringement "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior"); *see also Eko*, 946 F.3d at 1379 (explaining that after a jury has found willfulness, *Halo* requires courts to consider whether the "accused patent infringer's conduct was 'egregious behavior' or 'worthy of punishment'").

[133] *See Eko*, 946 F.3d at 1378. It is important to note that the Supreme Court has recognized "deliberate" infringement as a form of egregious conduct. *Halo*, 136 S. Ct. at 1932 (describing "[t]he sort of conduct warranting enhanced damages" as "willful, wanton, malicious, bad-faith, *deliberate*, consciously wrongful, flagrant, or— indeed—characteristic of a pirate" (emphasis added)). Thus, evidence of egregious conduct other than deliberateness is not necessarily required for a court to enhance damages. *See id.*

[134] *See Eko*, 946 F.3d at 1378; *see also Rite-Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1126 (Fed. Cir. 1987) ("The term "willfulness" . . . reflects a threshold of culpability in the act of infringement that, alone or with other considerations of the particular case, contributes to the court's assessment of the consequences of patent infringement [i.e., whether enhanced damages are warranted].").

ultimately finds the infringer's conduct sufficiently egregious to actually award enhanced damages does not affect whether a plaintiff is able to show willfulness.

Based on these standards, Longhorn's remaining pre-filing willfulness claims must be dismissed because Longhorn has failed to plausibly allege that any infringement by Spectrum during the pre-filing period was deliberate. Longhorn argues that its allegations of knowledge and infringement are sufficient at the pleadings stage to support an inference of willfulness.[135] However, recent Federal Circuit case law directly undercuts such an argument.[136] In granting a defendant's motion for judgment as a matter of law in *Bayer*, the Federal Circuit held that "[k]nowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement."[137] Courts have routinely required evidence beyond plausible allegations of knowledge and infringement to find that infringement was deliberate.[138] And, indeed, such a requirement is only logical, as finding infringement deliberate solely because a defendant knew about the patents could lead to undue punishment of defendants who, in good faith, attempted to design around patents they knew about.[139]

---

[135] ECF No. 31 at 21.

[136] *See Bayer*, 989 F.3d at 988.

[137] *Id.* Although *Bayer* did not address a motion to dismiss, its holding undercuts any inference that Spectrum can be held liable for willful infringement based on what Longhorn has alleged. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The cases Longhorn cites in support of its argument to the contrary were all decided before *Bayer* and, thus, are unpersuasive in light of its holding.

[138] *See, e.g.*, *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1380 (Fed. Cir. 2020); *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1354 (Fed. Cir. 2018); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *Ocado Innovation, Ltd. v. AutoStore AS*, No. 21-CV-41-JL, 2021 WL 3604249, at *15 (D.N.H. Aug. 13, 2021); *APS Tech., Inc. v. Vertex Downhole, Inc.*, No. CV 19-1166 (MN), 2020 WL 4346700, at *1 (D. Del. July 29, 2020); *Bio-Rad Lab'ys Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017).

[139] *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1457 (Fed. Cir. 1991) ("Designing around patents is, in fact, one of the ways in which the patent system works to the advantage of the public in promoting progress in the useful arts, its constitutional purpose."); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's

However, Longhorn's post-filing willful infringement claims are different. For these claims, the FAC's allegations that infringement since the initial complaint was filed is willful are supported by the fact that the complaint put Spectrum on notice of its possible infringing activities. The question thus becomes whether the notice of alleged infringement provided by the complaint, when combined with Longhorn's other allegations, supports a reasonable inference that any continued infringement by Spectrum in the post-filing period is deliberate.

Based on its review of relevant case law, the court finds the notice of infringement provided by the initial complaint supports an inference that any continued infringement by Spectrum since it was filed has been deliberate under the facts of this case. Courts have generally found allegations of deliberate infringement plausible when the alleged infringer was directly confronted with accusations of infringement and decided to continue its activities anyway.[140] As discussed above, Longhorn has plausibly alleged that Spectrum had knowledge of the Asserted Patents (either pre- or post-filing) and the complaint gave notice to Spectrum that its activities

---

products, even when they are patented, thus bringing a steady flow of innovations to the marketplace. It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them.").

[140] *See Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, No. CV 20-1646-RGA-JLH, 2021 WL 3526178, at *4 (D. Del. Aug. 11, 2021) (report and recommendation finding that a complaint's allegations regarding infringement put the defendant on notice of its alleged infringement sufficient to support a post-filing willful infringement claim); *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 WL 3134260, at *2 (W.D. Tex. July 23, 2021) (finding that a defendant's knowledge of its alleged infringement from the commencement of the lawsuit against it was sufficient for a plaintiff to state a claim of post-filing willful infringement); *Team Worldwide Corp. v. Acad., Ltd.*, No. 219CV00092JRGRSP, 2021 WL 1897620, at *6 (E.D. Tex. May 3, 2021), *order clarified*, 2021 WL 1854302 (E.D. Tex. May 10, 2021), *report and recommendation adopted*, 2021 WL 1985688 (E.D. Tex. May 18, 2021) ("A reasonable jury could find that the Defendants purposely or knowingly failed to conduct a reasonable inquiry into the merits of [the plaintiff's] patent infringement claims. Continuing sale of an accused product when considered with other facts and circumstances can be considered willfully infringing behavior."); *APS*, 2020 WL 4346700, at *1 (finding allegations of willfulness plausible when the plaintiff sent a letter to the alleged infringer before the lawsuit claiming infringement, even though the defendant continued its activities because it believed the plaintiff's patent was invalid); *Bio-Rad*, 267 F. Supp. 3d at 501 (finding a plaintiff sufficiently pleaded willfulness when the defendant continued its allegedly infringing activities after receiving a letter from the plaintiff notifying it of the infringement and proposing licensing terms); *Clouding IP, LLC v. Amazon.com, Inc.*, No. CA 12-641-LPS, 2013 WL 2293452, at *4 (D. Del. May 24, 2013) ("For purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superceded [sic] original complaint formally alleging infringement.").

infringed those patents.[141] While little is known about Spectrum's investigation into the validity of Longhorn's infringement claims at this time, its decision to continue producing and selling the SDNA-1000 in light of those plausible claims supports a reasonable inference that its alleged post-filing infringement is deliberate. While discovery may subsequently render such an inference implausible, that does not mean Longhorn's post-filing willfulness claims should be dismissed at this stage of the case.

For these reasons, Spectrum's motion to dismiss Longhorn's willfulness claims will be granted as to the remaining pre-filing willful infringement claims but denied as to all post-filing claims.

## IV.   Longhorn is Granted Leave to File a Motion to Amend

As a final issue, Longhorn asks in its response to Spectrum's motion to dismiss that the court grant it leave to amend any claim that is dismissed. Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleadings after the time for amending as a matter of course "with the court's leave." The rule instructs the court to "freely give leave when justice so requires."[142] The Tenth Circuit has further instructed that "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of

---

[141] Spectrum expresses concern that allowing elements of post-filing willful infringement claims to be supported by the filing of a complaint will turn all patent infringement cases into willful infringement cases and, thus, subject defendants to the possibility of enhanced damages if they do not immediately cease their alleged infringing activities. ECF No. 32 at 5–7. The court understands but does not share these concerns. The court's findings here do not mean that evidence of knowledge and deliberateness provided by the filing of a complaint itself will be sufficient to get post-filing willfulness claims past a motion for summary judgment. Nor does it mean that such evidence alone is sufficient to support a jury finding that post-filing infringement was willful. In any event, the ultimate question of whether to award enhanced damages belongs to the court. *See Eko*, 946 F.3d at 1378. Thus, even though Longhorn's post-filing willfulness claims survive Spectrum's motion to dismiss here, the court could enhance damages only if Longhorn is ultimately able to prove that Spectrum directly or indirectly infringed the asserted patents after the complaint was filed, that it did so deliberately, and that its post-filing actions were sufficiently egregious to justify an award of enhanced damages in accordance with *Halo*.

[142] Fed. R. Civ. P. 15(a)(2).

amendment."[143] The court finds that it is in the interests of justice to allow Longhorn an opportunity to amend its complaint regarding the dismissed claims, if it has good cause to do so.[144]

## ORDER

For the reasons stated in this Memorandum Decision and Order, Spectrum's Motion to Dismiss [27] is **GRANTED IN PART** and **DENIED IN PART**.

Spectrum's motion to dismiss is **GRANTED** with respect to all of Longhorn's willful infringement claims for the period leading up to the commencement of this lawsuit. Spectrum's motion is also **GRANTED** with respect to Longhorn's Fourth and Twelfth Claims for Relief, indirect infringement of the '467 Patent and '256 Patent respectively. Those claims are dismissed without prejudice and Longhorn is **GRANTED** leave to file a motion to amend its complaint.

Spectrum's motion to dismiss is **DENIED** with respect to all other claims.

Signed September 23, 2021.

BY THE COURT

_____

David Barlow
United States District Judge

---

[143] *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[144] *See* DUCivR 7-1(b)(1)(A); DUCivR 15-1.