D. Craig Parry (Bar. No. 7274)
cparry@parrbrown.com
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, UT  84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750

Joseph F. Jennings (*Pro Hac Vice)*
joseph.jennings@knobbe.com
Paul N. Conover (*Pro Hac Vice*)
paul.conover@knobbe.com
Ali S. Razai (*Pro Hac Vice*)
ali.razai@knobbe.com
William O. Adams (*Pro Hac Vice*)
william.adams@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main St., 14th floor
Irvine, CA 92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

David G. Kim (*Pro Hac Vice*)
david.kim@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone:  (310) 551-3450
Facsimile:  (310) 601-1263

*Attorneys for Defendant, Spectrum Solutions LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| LONGHORN VACCINES & DIAGNOSTICS, LLC, a Delaware limited liability company,<br><br>             Plaintiff,<br><br>    vs.<br><br>SPECTRUM SOLUTIONS LLC, a Delaware limited liability company,<br><br>             Defendant. | Case No. 2:20-CV-00827-DBB-JCB<br><br>**DEFENDANT SPECTRUM SOLUTIONS LLC'S MOTION TO STAY PENDING *INTER PARTES* REVIEW**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

## TABLE OF CONTENTS

Page No.

RELIEF SOUGHT AND SPECIFIC GROUNDS THEREFORE .................................................. 1

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. LEGAL STANDARD ........................................................................................................ 2

IV. ARGUMENT .................................................................................................................... 3

    A. THE EARLY STAGE OF THIS LITIGATION WEIGHS STRONGLY IN FAVOR OF A STAY ................................................................... 3

    B. A STAY WILL SIMPLIFY THE ISSUES AND REDUCE THE BURDEN ON THE PARTIES AND THE COURT ............................................. 4

        1. A Stay Will Simplify the Case Because Five of the Six Asserted Patents are Subject to IPRs and are Likely to be Found Unpatentable ..................................................................................... 4

        2. Staying the Litigation Will Simplify the Issues Even Though One Asserted Patent is Not Subject to IPR ................................................. 6

    C. A STAY WILL NOT UNDULY PREJUDICE LONGHORN OR PROVIDE SPECTRUM WITH A CLEAR TACTICAL DISADVANTAGE .................................................................................................. 8

        1. Spectrum Acted Diligently in Promptly Filing Its IPRs and this Motion to Stay ................................................................................. 8

        2. *Inter Partes* Review Has Already Been Instituted ..................................... 9

        3. Longhorn Can Be Compensated Through Money Damages ................... 10

V. CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Page No(s).**

*454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*,
 No. 15-595, 2016 WL 6594083 (D. Del. Nov. 7, 2016) .................................................9

*Brixham Sols. Ltd. v. Juniper Networks, Inc.*,
 No. 13-616, 2014 WL 1677991 (N.D. Cal. Apr. 28, 2014) ............................................5

*Cellect LLC v. Samsung Elecs. Co.*,
 No. 19-438, 2020 WL 3425166 (D. Colo. June 23, 2020) .............................................5

*Corel Software, LLC v. Microsoft Corp.*,
 No. 15-528, 2016 WL 4444747 (D. Utah 2016) ...........................................3, 4, 5, 10

*Destination Maternity Corp. v. Target Corp.*,
 12 F. Supp. 3d 762 (E.D. Pa. 2014) ..........................................................................3, 8

*Donnelly Corp. v. Guardian Indus. Corp.*,
 No. 05-74444, 2007 WL 3104794 (E.D. Mich. Oct. 22, 2007) ......................................6

*ESIP Series 1, LLC v. doTERRA Int'l, LLC*,
 No. 15-779, 2017 WL 11474146 (D. Utah Dec. 5, 2017) .............................................4

*GII Acquisition, L.L.C. v. Cybernet Sys. Corp.*,
 No. 13-14890, 2014 WL 4209928 (E.D. Mich. 2014) ...................................................8

*IOENGINE, LLC v. Paypal Holdings, Inc.*,
 No. 18-452, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ...............................................7

*Kannuu Pty Ltd. v. Samsung Elecs. Co., Ltd.*,
 No. 19-4297, 2021 WL 195163 (S.D.N.Y. Jan. 19, 2021), *aff'd*,
 15 F.4th 1101 (Fed. Cir. 2021) ........................................................................................7

*Koss Corporation v. Skullcandy, Inc.*,
 No. 21-203, Dkt. 43 (D. Utah Jul. 21, 2021) ..................................................................5

*Larson Archery Co. v. Mathews, Inc.*,
 No. 11-126, 2013 WL 139472 (D. Utah Jan. 10, 2013) .................................................5

*Pool Cover Specialists Nat'l., Inc. v. Cover-Pools Inc.*,
 No. 08-879, 2009 WL 2999036 (D. Utah Sep. 18, 2009) ...............................................2

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No.**

*Princeton Digital Image Corp. v. Konami Digital Entm.'t Inc.*,
　No. 12-1461, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ..........................................................8

*Rensselaer Polytechnic Inst. v. Apple Inc.*,
　No. 13-0633, 2014 WL 201965 (N.D.N.Y. Jan. 15, 2014)........................................................9

*Ruckus Wireless, Inc. v. Netgear, Inc.*,
　No. 09-5271, 2010 WL 1222151 (N.D. Cal. Mar. 25, 2010) ....................................................7

*SMT Sols., Inc. v. ExpoEvent Supply LLC*,
　No. 11-6225, 2012 WL 3526830 (D.N.J. Aug. 15, 2012) ........................................................8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
　759 F.3d 1307 (Fed. Cir. 2014)................................................................................................10

*White Knuckle LP, LLC v. Elec. Arts Inc.*,
　No. 15-36, 2016 WL 3959689 (D. Utah July 20, 2016) .......................................................4, 9

*Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc.*,
　No. 14-1153, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) ....................................................2

*Zillow, Inc. v. Trulia, Inc.*,
　No. 12-1549, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013)................................................10

### OTHER AUTHORITIES

35 U.S.C. § 315................................................................................................................................5

35 U.S.C. § 316................................................................................................................................9

37 C.F.R. § 42.100...........................................................................................................................9

**RELIEF SOUGHT AND SPECIFIC GROUNDS THEREFORE**

Defendant Spectrum Solutions LLC ("Spectrum") respectfully moves to stay this action pending the resolution of Spectrum's five recently instituted Petitions for *Inter Partes* Review ("IPR"), which challenge the patentability of all claims of five of the six asserted patents. A stay is appropriate here in view of the Patent Trial and Appeal Board ("PTAB")'s finding that there was a "reasonable likelihood" that the patent claims of those five instituted IPRs are unpatentable. Moreover, as set forth more fully below, the case is very early in the proceedings, a stay will likely simplify or eliminate claims and issues in the lawsuit, and neither party will be prejudiced by a stay.

## I. INTRODUCTION

Each factor that courts consider in staying a case strongly weighs in favor of a complete case stay as to all six of the asserted patents.[1] First, this case is in its infancy. Fact discovery has just begun and the Court has not set a trial date. Second, staying this case to allow the PTAB to consider the validity of all asserted claims will simplify—and potentially eliminate—issues of validity and infringement. Likewise, staying the case will significantly reduce—and potentially eliminate—costs and other burdens for the parties and the court. If the PTAB concludes that all claims are invalid, then all the claims at issue in this case from five of the six asserted patents will become moot. Even if the PTAB does not find all claims invalid, granting a stay will simplify issues—such as claim construction—for this Court. The six asserted patents significantly overlap because they are in a single patent family and share identical specifications. The PTAB's findings regarding five of those six patents will likely simplify issues for all asserted patents, due to the

---

[1] During the parties' meet and confer, Longhorn proposed two alternatives to staying the case: "continuing fact discovery and extending the non-fact discovery deadlines, or else continuing litigation on the patent that was not instituted."

significant overlap. Third, staying this case to allow for the PTAB to issue decisions assessing the validity of the challenged patents would neither prejudice Longhorn nor present a tactical advantage to Spectrum. Spectrum promptly availed itself of the IPR procedure by filing its petitions as quickly as possible and long before the statutory one-year bar date for filing such petitions. Spectrum also moved to stay the case shortly after the PTAB's institution decisions.

## II. BACKGROUND

Longhorn filed an amended complaint for direct and indirect patent infringement of six patents against Spectrum on January 8, 2021. Dkt. 25. Spectrum promptly prepared and filed Petitions for *Inter Partes* Review on April 26, 2021 and April 27, 2021, challenging the patentability of all claims of all six asserted patents. Ex. 1, Declaration of David G. Kim ("Kim Decl."), Exs. A-F. The PTAB granted five of Spectrum's petitions on November 12, 18, and 19, finding that the petitions met the threshold standard for institution, namely there was a "reasonable likelihood" that at least one of the patent claims in each patent is unpatentable. Kim Decl., Exs. G–H and J-L. The PTAB denied the petition for one of the asserted patents. Kim Decl., Ex. I. Spectrum now promptly moves to stay the present action.

## III. LEGAL STANDARD

"[D]istrict courts have broad discretion to manage their dockets, including the power to grant a stay of proceedings." *Murata Mach. USA v. Daifuku Co.*, LTD., 830 F.3d 1357, 1362 (Fed. Cir. 2016). There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of" IPR proceedings, which were designed to be "'a timely, cost-effective alternative to litigation.'" *Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc.*, No. 14-1153, 2015 WL 1809309, *1, *3 (C.D. Cal. Apr. 20, 2015) (unpublished); *see also Pool Cover Specialists Nat'l.,*

*Inc. v. Cover-Pools Inc.*, No. 08-879, 2009 WL 2999036, *2 (D. Utah Sep. 18, 2009) (unpublished) ("There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination proceedings."). When determining whether to grant a motion to stay pending an IPR, courts generally examine three factors: "(1) whether a stay will simplify the issues in question and trial of the case; (2) whether discovery is complete and a trial date has been set; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Corel Software, LLC v. Microsoft Corp.*, No. 15-528, 2016 WL 4444747, at *1 (D. Utah 2016) (internal quotes omitted).

## IV. ARGUMENT

### A. THE EARLY STAGE OF THIS LITIGATION WEIGHS STRONGLY IN FAVOR OF A STAY

The factor of whether discovery is complete and a trial date has been set indisputably weighs in favor of a stay. Discovery is in its infancy, and the Court has not set a trial date. Further, the substantive phase of this case has not even begun to proceed as outlined by the Local Patent Rules, which provide for: (i) the disclosure of asserted claims and infringement contentions (L.P.R. 2.3); (ii) the exchange of claim terms for construction and the narrowing of claim terms (L.P.R. 4.1(a)); (iii) multiple rounds of claim construction briefing (L.P.R. 4.2); (iv) and a claim construction hearing (L.P.R. 4.3). The parties have not begun any of the costly efforts with regard to claim construction proceedings, document productions, depositions, expert discovery, or dispositive motion practice. This weighs heavily in favor of a stay. *See, e.g., Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 770 (E.D. Pa. 2014) ("Staying a case that is in an early stage of litigation 'advance[s] judicial efficiency and maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.'") (citation omitted).

This District has granted stays of patent litigation at a much later stage than this.  *See, e.g., Corel*, 2016 WL 4444747, *2 (granting stay even where parties have nearly completed fact discovery); *see also White Knuckle LP, LLC v. Elec. Arts Inc.*, No. 15-36, 2016 WL 3959689, at *2 (D. Utah July 20, 2016) (unpublished) (granting stay where parties exchanged "limited fact discovery, no depositions have been scheduled, and no expert discovery has taken place).

**B.**  **A STAY WILL SIMPLIFY THE ISSUES AND REDUCE THE BURDEN ON THE PARTIES AND THE COURT**

**1.**  **A Stay Will Simplify the Case Because Five of the Six Asserted Patents are Subject to IPRs and are Likely to be Found Unpatentable**

Five out of six of Spectrum's IPRs were instituted, and in those five, the PTAB found that there was a "reasonable likelihood" that at least one of the claims in each patent is unpatentable. Although Longhorn is not opposed to stay the case as to the five instituted patents, it opposes a stay of the action.  Kim Decl., Ex. N.  However, regardless of the final disposition of the *inter partes* review for those five asserted patents, a litigation stay will simplify the issues in question and the trial of the instant case.  The *inter partes* review will be disposed in one of two ways for each challenged claim: (1) the PTAB finds the challenged claim unpatentable and cancels the claim or (2) the PTAB finds the challenged claim is patentable.

If situation (1) occurs, then the instant case will be simplified because the unpatentable claims will no longer be at issue, and there will be no discovery or arguments regarding either infringement or validity of those claims.  *See ESIP Series 1, LLC v. doTERRA Int'l, LLC*, No. 15-779, 2017 WL 11474146, *2 (D. Utah Dec. 5, 2017) (unpublished) (granting a stay even where defendant filed an IPR petition against only one of the two asserted patents because the potential

invalidation by the PTO of the patent "would result in half the number of claims to construe and challenge with summary judgment motions for non-infringement and invalidity").

Even if situation (2) occurs, the instant case will be simplified for several reasons. First, Spectrum will be estopped from making certain arguments that it made to the PTAB in the instant case. *See Brixham Sols. Ltd. v. Juniper Networks, Inc.*, No. 13-616, 2014 WL 1677991, *1 (N.D. Cal. Apr. 28, 2014) (unpublished) (stating that "the case is likely to be streamlined even if no claims are cancelled because of the estoppel provisions of 35 U.S.C. § 315(e)"); *Larson Archery Co. v. Mathews, Inc.*, No. 11-126, 2013 WL 139472, *1 (D. Utah Jan. 10, 2013) (unpublished) (stating that the estoppel provision weighed in favor of granting a stay pending *inter partes* reexamination). Second, the Court will benefit from the record developed during the IPR proceedings. *Corel*, 2016 WL 4444747 at *2 ("Proceeding with claim construction without the benefit of the additional intrinsic record developed during IPR could complicate this case by making it necessary to reconsider certain claim construction issues.") (internal citations, quotations, and brackets omitted). Third, the Court will benefit from the PTAB's expertise in claim construction and claim validity. *Cellect LLC v. Samsung Elecs. Co.*, No. 19-438, 2020 WL 3425166, *4 (D. Colo. June 23, 2020) (unpublished) (considering the "PTO's expertise in determining claim validity and the assistance such determination will assist the Court in its own analysis" to determine that a stay will result in a simpler and more streamlined trial); *Koss Corporation v. Skullcandy, Inc.*, No. 21-203, Dkt. 43 (D. Utah Jul. 21, 2021) ("[A]llowing the PTO to apply its expertise in completing the IPR proceedings will simplify the issues in this case, clarify relevant issues, and, therefore, make future litigation more efficient.") (attached as Ex. 2 at 2).

Therefore, no matter the final resolution of those five instituted IPRs, the issues and trial in the instant litigation will be simplified by a stay.

### 2. Staying the Litigation Will Simplify the Issues Even Though One Asserted Patent is Not Subject to IPR

Spectrum recognizes that even if the PTAB finds all of the patent claims of the five instituted IPRs unpatentable, a single asserted patent will still remain in the case. However, "the mere fact that [a proceeding before the USPTO] is not likely to dispose of the case completely does not mean that issues will not be simplified by" the USPTO proceeding. *Donnelly Corp. v. Guardian Indus. Corp.*, No. 05-74444, 2007 WL 3104794, at *5 (E.D. Mich. Oct. 22, 2007) (unpublished). As shown above, no matter the final disposition of the IPRs, the issues in this litigation will be simplified. Further, courts have recognized that even where all the patents-in-suit are not at issue in a USPTO proceeding "both discovery and trial on the matter will be simplified by having the opinion and expertise of the USPTO before the Court." *Id.* at *6.

This is especially true here, given that all of the asserted patents are very closely related. For example, the '330 patent, which is not subject to IPR, is a continuation of the '443 and '467 patents, which are both subject to instituted IPRs. Indeed, the '330 patent is so closely related to the '443 and '467 patents that during prosecution the PTO issued double patenting rejections against the later filed patent, meaning it viewed the patent claims as too similar to Longhorn's earlier filed patents, pursuant to which Longhorn filed a terminal disclaimer. *See* Kim Decl., Ex. M (excerpts of '330 patent file history reflecting double patenting rejection and terminal disclaimer). Indeed, the claims of the six asserted patents are almost identical.

Even considering only the three asserted claims of the '330 Patent, the extent of overlap across the Asserted Patents is significant. Specifically, Claim 1 of all Asserted Patents cover

compositions comprising a chaotrope, a detergent, a reducing agent, a chelator, and a buffer. Claim 31 of the '330 Patent (not subject to an IPR) and Claim 1 of the '467 Patent (subject to an IPR) are both method claims comprising similar language of mixing, in one step, a composition comprising a chaotrope, detergent, chelator, reducing agent, and buffer with a biological sample. Claim 38 of the '330 Patent and Claims 41, 32, and 32 of the '443, '399, and '240 Patents, respectively, each claim a sample collection system comprising a collection device, collection vessel, and composition of claim 1. These are merely illustrative examples of the overlap in the asserted claims of the '330 Patent (not subject to an IPR) and a subset of the claims of the other asserted patents that are subject to IPRs. The full extent of overlap—and accordingly, the potential for issue simplification—is much more extensive.

Duplicative and burdensome disputes on key terms that overlap throughout all six Asserted Patents could be avoided and the central questions of this patent suit could be simplified by staying the case pending resolution of the six instituted IPRs. Recognizing this potential for simplification, district courts across the country routinely stay litigation where, as here, IPRs have been instituted against a subset of the asserted patents. *See, e.g.*, *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, Ltd., No. 19-4297, 2021 WL 195163, at *8 (S.D.N.Y. Jan. 19, 2021), *aff'd*, 15 F.4th 1101 (Fed. Cir. 2021) (collecting cases). Indeed, issue simplification is a "real possibility" where, as here, patents subject to IPR have identical or near-identical specifications and share common claim terms—even if not every asserted patent and not every potentially asserted claim is the subject of IPR. *See IOENGINE, LLC v. Paypal Holdings, Inc.*, No. 18-452, 2019 WL 3943058, *8-12 (D. Del. Aug. 21, 2019) (unpublished) (though only one of three patents was subject to IPR, granting stay due to substantial similarity of the three patents, as demonstrated by double-patenting rejections); *Ruckus*

*Wireless, Inc. v. Netgear, Inc.*, No. 09-5271, 2010 WL 1222151, *1 (N.D. Cal. Mar. 25, 2010) (unpublished) (simplification would result due to common claim terms); *see also SMT Sols., Inc. v. ExpoEvent Supply LLC*, No. 11-6225, 2012 WL 3526830, at *4 (D.N.J. Aug. 15, 2012) (unpublished) (finding simplification where "not all of the patents-in-suit are under reexamination" because "the patents-in-suit all share nearly identical disclosures").

Because a litigation stay here will simplify the issues in the instant case, this factor also weighs heavily in favor of a stay.

C. **A STAY WILL NOT UNDULY PREJUDICE LONGHORN OR PROVIDE SPECTRUM WITH A CLEAR TACTICAL DISADVANTAGE**

In deciding the undue prejudice factor, courts consider "(1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceeding; and (4) the relationship of the parties," and the related question of whether the plaintiff may be compensated through future money damages. *See, e.g.*, *Princeton Digital Image Corp. v. Konami Digital Entm.'t Inc.*, No. 12-1461, 2014 WL 3819458, at *4 (D. Del. Jan. 15, 2014) (unpublished). Collectively, these factors also weigh in favor of a stay.

1. **Spectrum Acted Diligently in Promptly Filing Its IPRs and this Motion to Stay**

Spectrum acted diligently by filing **all six** of its IPR petitions only a few months after Longhorn filed this action. *Destination*, 712 F. Supp. 3d at 766-76 (rejecting the contention that the accused infringer unduly delayed by filing its IPR request ten months after the lawsuit began); *see also GII Acquisition, L.L.C. v. Cybernet Sys. Corp.*, No. 13-14890, 2014 WL 4209928, *2-*4 (E.D. Mich. 2014) (unpublished) (finding no undue delay in filing the reexamination where the accused infringer filed its request within six months of the patentee having filed suit). Filing

Spectrum's six IPR petitions, which collectively contain thousands of pages when one counts the supporting expert declarations, in just a few months after being sued was no easy feat and demonstrates that Spectrum did not "delay" filing its IPRs.

Neither did Spectrum delay in bringing this motion. Spectrum filed the present motion shortly after receiving the IPR institution decisions. *See 454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, No. 15-595, 2016 WL 6594083, at *4 (D. Del. Nov. 7, 2016) (unpublished) ("Defendants filed their Motion shortly after the PTAB issued its decisions to proceed with a validity trial on all of the Asserted Claims, which is generally the ideal time at which to file such a request."). Indeed, courts prefer a motion to stay be filed **after** an institution decision, as this furthers judicial economy. *See, e.g.*, *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 13-0633, 2014 WL 201965, at *5 (N.D.N.Y. Jan. 15, 2014) (unpublished) ("Several courts have concluded that the factors relevant to a stay analysis cannot be meaningfully addressed until the PTO determines whether to institute an IPR").

### 2. *Inter Partes* Review Has Already Been Instituted

The procedural status of the IPRs also favors a stay. The PTAB has already instituted trial for five of the six asserted patents, which claims significantly overlap the asserted claims from the non-instituted IPR (the '330 patent). *See White Knuckle*, 2016 WL 3959689 at *2–3 (granting stay where IPR was instituted on asserted patent). The PTAB is expected to issue its final decisions by no later than November 19, 2022. *See* 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c) (requiring a final written decision within one year of institution). Therefore, a stay would last less than a year, which weighs in favor of a stay. *See 454 Life Scis.*, 2016 WL 6594083 at *4 (granting stay where IPR proceedings would be decided in eight months).

### 3. <u>Longhorn Can Be Compensated Through Money Damages</u>

The availability of money damages to adequately compensate the patentee and the failure of a patentee to move for preliminary injunction both weigh against a finding of undue prejudice. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318–19 (Fed. Cir. 2014). Further, Longhorn's failure to seek a preliminary injunction demonstrates that it does not believe it is suffering any irreparable harm. *Id.* at 1319 ("[T]he fact that it was not worth the expense to ask for [a preliminary injunction] contradicts [the patentee's] assertion that it needs injunctive relief as soon as possible."); *Zillow, Inc. v. Trulia, Inc.*, No. 12-1549, 2013 WL 5530573, *6 (W.D. Wash. Oct. 7, 2013) (unpublished) ("Many courts have found . . . that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief."). The case has not progressed with any urgency. Rather, since this action was filed, little has occurred: The parties recently served their first discovery requests, and Longhorn has not even served its initial infringement contentions.

Because a stay will not unduly prejudice Longhorn, this factor also weighs in favor of a stay. *See Corel*, 2016 WL 4444747 at *2 (finding undue prejudice factor weighed in favor of stay where plaintiff had not sought injunctive relief and "delay inherent to the reexamination process does not constitute, by itself, undue prejudice.").

## V. <u>CONCLUSION</u>

For the reasons stated above, all relevant factors weigh in favor of a stay pending resolution of Spectrum's five instituted IPR petitions. Accordingly, Spectrum respectfully requests that this motion be granted.

Respectfully submitted,

Dated:  December 8, 2021	By: */s/ Craig Parry*
D. Craig Parry (Bar. No. 7274)
cparry@parrbrown.com
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, UT  84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750

Joseph F. Jennings (*Pro Hac Vice)*
joseph.jennings@knobbe.com
Paul N. Conover, (*Pro Hac Vice*)
paul.conover@knobbe.com
Ali S. Razai (*Pro Hac Vice*)
ali.razai@knobbe.com
William O. Adams (*Pro Hac Vice*)
william.adams@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main St., 14th floor
Irvine, CA 92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

David G. Kim (*Pro Hac Vice*)
david.kim@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP** 1925 Century Park East, Suite 600
Los Angeles, CA 90067
Tel: 310-551-3450
Facsimile: 310-601-1263

-12-

## CERTIFICATE OF SERVICE

I hereby certify that on the December 8, 2021, a true and correct copy of the foregoing was served via the Court's CM/ECF electronic filing system on the following:

>Kenneth B. Black (5588)
>ken.black@stoel.com
>Wesley F. Harward (15623)
>wesley.harward@stoel.com
>**STOEL RIVES LLP**
>201 S. Main Street, Suite 1100
>Salt Lake City, UT  84111
>Telephone:  (801) 328-3131
>
>
>Attorneys for Plaintiff,
>Longhorn Vaccines and Diagnostics, LLC

                               */s/ Craig Parry*
                                   Craig Parry